# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| POLSINELLI PC, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No:**    4:25-cv-00665 |
| | ) | |
| LOUIS MASTRIANI, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMS TRADE LLP, | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

COMES NOW Plaintiff Polsinelli PC ("Polsinelli"), by and through its undersigned counsel, and for its cause of action against Defendants Louis Mastriani ("Mastriani") and AMS TRADE LLP ("AMS"), states as follows:

### Nature of the Case

1.      This is a civil action brought by Polsinelli, a law firm, against the Defendants, who include a former senior attorney with Polsinelli and his former law firm, who converted and improperly caused the disbursement of funds to themselves and others totaling at least $1,542,385.21.

2.      This action is brought for common law fraud; breach of fiduciary duties; conversion; money had and received; unjust enrichment; imposition of a constructive trust; violation of the Missouri Uniform Fraudulent Transfer Act, § 428.005, *et seq*. RSMo.; for injunctive relief; for a prejudgment Writ of Attachment pursuant to § 521.010, *et seq*. RSMo. as applicable under Federal Rule of Civil Procedure 64; for an accounting; and for appointment of a receiver under the Missouri Commercial Receivership Act, § 515.500 *et seq*. RSMo.

3.     Contemporaneous with the filing of this Complaint, Polsinelli has filed a Motion for Appointment of Receiver.  Polsinelli will be requesting that its Motion for Appointment of Receiver be addressed by the Court first as the appointment of a receiver may reduce the need for other extraordinary relief.  And, following the appointment of a receiver, the Court can proceed to make a summary decision on the disposition of the funds at issue in this action, if the Court deems it appropriate.

## Jurisdiction

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000 and is between citizens of different states.  Polsinelli is a professional corporation, incorporated in the state of Missouri with its principal place of business in the state of Missouri.  Upon information and belief, Mastriani resides in the District of Columbia.  Upon information and belief, AMS is a limited liability partnership organized under the laws of the District of Columbia with its principal place of business in the District of Columbia.

## Venue

5.     Venue is proper in the United States District Court, Western District of Missouri pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## Parties

6.     Plaintiff Polsinelli PC is a professional corporation and law firm organized under the laws of the state of Missouri with its principal place of business in Kansas City, Missouri.

105394251.15

7.     Defendant Louis Mastriani is a natural person and attorney, formerly a partner of AMS and subsequently an attorney at Polsinelli. Upon information and belief, Mastriani resides in the District of Columbia.

8.     Defendant AMS is a limited liability partnership organized under the laws of the District of Columbia with its principal place of business in the District of Columbia.   On information and belief, AMS ceased operations as of December 31, 2022, after which Mastriani joined Polsinelli as an attorney.  However, AMS still maintains one or more bank accounts.  On information and belief, only Mastriani and one other individual have any ownership interest in AMS.  Mastriani and AMS are collectively referred to herein as the "**Defendants**."

## General Allegations

9.     The following general allegations are supported by the Declaration of Patrick Woolley, a true copy of which is attached hereto and incorporated herein by reference as **Exhibit 1**.

10.     On or about January 3, 2023, Mastriani joined Polsinelli as an employee with the title of Senior Partner, pursuant to the terms of a written offer and term sheet to which Mastriani agreed by signed acknowledgment on October 7, 2022 ("Employment Agreement").

11.     Pursuant to the Employment Agreement, Mastriani agreed, among other things, (a) that he would be a full-time attorney/employee with Polsinelli, (b) to terms of compensation, and (c) that he would be subject to the Policies and Procedures Manual of the Polsinelli.[1]

---

[1] Polsinelli's Policies and Procedures Manual provides, among other things, that "[n]o attorney employee may practice his/her profession for any other person or entity, or accept fees for practicing their profession or the referral of legal business from any other person or entity," and "[e]mployees shall not accept gifts (whether in the form of cash, services, or any other nature) from a customer, client, supplier, or other business, other than an ordinary social amenity."  Policies and Procedures, p. 57.

3

12.     Upon joining employment with Polsinelli, Mastriani arranged for a client (referred to herein as "ABC Client") to be transferred from AMS to Polsinelli as its client.  (The identity of the ABC Client is withheld for the protection of the ABC Client, but such identity is not necessary to set forth the claims against Defendants herein).

12.     Polsinelli and ABC Client also executed an engagement letter dated March 9, 2023 (the "Engagement Letter"), pursuant to which ABC Client agreed to pay to Polsinelli a contingent fee on the "Net Sum Recovered" by the ABC Client after the filing of any complaint against certain adverse parties (referred to herein as the "ABC Client Contingency Fee Matter").  Mastriani acknowledged and concurred that any contingent fee earned and paid by ABC Client in connection with the ABC Client Contingency Fee Matter would be paid to Polsinelli.

13.     The Engagement Letter was consistent with Mastriani's Employment Agreement and Polsinelli's Policies and Procedures in that it required ABC Client, as the client of Polsinelli, to pay any contingent fee to Polsinelli, rather than to AMS or Mastriani, an employee of Polsinelli whose terms of compensation were governed by his Employment Agreement.

14.     While AMS ceased operations on or about December 31, 2022, Mastriani did not dissolve AMS as an entity upon joining Polsinelli because AMS was still receiving contingent fees on recurring royalty payments it had earned prior to Mastriani joining Polsinelli, including from ABC Client, on other matters not the subject of the March 9, 2023, Engagement Letter (referred to herein as "Prior Matter" or "Prior Matters").

15.      Thereafter, ABC Client would, from time to time, remit to Polsinelli contingent fees that AMS previously earned on Prior Matters, in which case Polsinelli would remit the fees to AMS because they had been earned by AMS prior to Mastriani joining Polsinelli as an employee.

16.     Consistent with the Engagement Letter, Mastriani himself acknowledged in a March 27, 2023, email discussing the ABC Client Contingency Fee Matter that "the fees and any contingency payments (other than [Prior Matter] royalties) will be paid to Polsinelli."

17.     On or about April 30, 2025, ABC Client entered into a favorable settlement agreement in the ABC Client Contingency Fee Matter.

18.     On information and belief, ABC Client received a substantial first payment under that settlement agreement in or about early May 2025, with the remainder to be paid shortly thereafter.  By June 5, 2025, all the payments due under the settlement agreement had been received by ABC Client (the "Client Recovery").

19.     On information and belief, by this time, Mastriani was planning to leave his employment with Polsinelli, unbeknownst to Polsinelli.

20.     In connection with the ABC Client Payment, ABC Client sent to Polsinelli, via Mastriani, a letter dated June 5, 2025 (the "Payment Letter").

21.     In the Payment Letter, ABC Client advised Polsinelli, via Mastriani, that a payment of $1,542,385.21 ("ABC Client Payment") was being made in accordance with an engagement letter between AMS and ABC Client, a subsequent letter transferring all of ABC Client's matters and files to Polsinelli, and a further engagement letter with Polsinelli (the Engagement Letter).[2]

22.     Mastriani withheld the Payment Letter and did not initially disclose it to Polsinelli management or staff.

23.     On June 5, 2025, after receiving the Payment Letter, Mastriani emailed ABC Client and falsely represented to it that the contingent fee on the ABC Client Contingency Fee Matter

---

[2] The Payment Letter stated that the Client Payment was enclosed with the Payment Letter, but it was actually not remitted to Polsinelli until June 23, 2025.

belonged to AMS, rather than to Polsinelli, and requested that ABC Client pay the contingent fee in the Fall of 2025, rather than immediately.

24.     Mastriani's purported justification for this request was that "there is a strong possibility that I may be joining a new firm in a couple of months.  If I do, the payment would be made to that firm, which I will then pass to me and my old firm [AMS]."

25.     ABC Client responded by email to Mastriani's request the same day and refused, based on the status of Polsinelli as its vendor of record for the payment and its Engagement Letter with Polsinelli.

26.     After ABC Client properly refused to pay the fee to AMS, Mastriani then emailed non-attorney Polsinelli staff members, Nicole Nowak and Morrisa Costanzo, on June 9, 2025, and advised them that ABC Client would be sending the contingent fee to Polsinelli and directed them to "process and transfer the funds to our AMS Trade account as you have done in the past;" that is, as a Prior Matter, rather than in accordance the Engagement Letter.

27.     On June 13, 2025, Ms. Nowak inquired of Mastriani in an email whether there was a written communication from ABC Client indicating that this fee was for a Prior Matter and whether "there is the potential for receiving a success fee or not" on the ABC Client Contingency Fee Matter, in an attempt to confirm whether the fee should be passed onto AMS as a Prior Matter or whether it belonged to Polsinelli as arising from the ABC Client Contingency Fee Matter.

28.     Mastriani intentionally and fraudulently misrepresented the nature and purpose of the ABC Client Payment in responding to Ms. Nowak on June 13, 2025, including the following representations (collectively, the "Representations"):

      a.     "The letter from [ABC Client] is attached.  However, there is no 'success fee.'"

b. "AMS receives the royalty payments from [Prior Matters]."

c. "[T]he [Client Recovery] was from the defendants in the . . . district court case for settlement of potential damages in that case. We were not counsel of record in that case . . ."

d. "However, the [ABC Client] CEO and his team decided to give me and AMS, not Polsinelli, a share."

e. "Not that I expect it to, but if Polsinelli takes a position that it is entitled to a share of the district court settlement I will oppose it by any means necessary."

29. Mastriani's statement to Ms. Nowak that there was no success fee was false and misleading.

30. Mastriani's statement to Ms. Nowak that AMS receives royalty payments from [Prior Matters] was misleading in that it implied that the fee was being paid on Prior Matters, rather than on the ABC Client Contingency Fee Matter under the Engagement Letter.

31. Mastriani's statement to Ms. Nowak that the Client Recovery was from defendants in the district court case in which Polsinelli was not counsel of record was also false and misleading as it implied that the Client Recovery was not from the ABC Client Contingency Fee Matter and omitted that the Engagement Letter provided that Polsinelli was entitled to a contingent fee on all recoveries from ABC Client's settlement of *any* complaint in either court involved against any respondent.

32. Mastriani's statement that the ABC Client CEO and his team decided to give Mastriani and AMS the fee was false.

7

33.     Relying on Mastriani's false and misleading Representations and omissions, on June 13, 2025, Ms. Nowak emailed Ms. Costanzo (who Mastriani had previously directed to wire the ABC Client Payment to AMS on June 9, 2025), and other members of Polsinelli accounting staff and stated, "AMS Trade has been advised that they will be receiving the <u>final [Prior Matter] licensing payment</u> to be sent to Polsinelli by [ABC Client] and due to Louis Mastriani." (Emphasis in the original).  Ms. Nowak also included AMS wire transfer instructions to send the ABC Client Payment to AMS.

34.     Mastriani was copied on this email.

35.     Mastriani knew at the time that Ms. Nowak sent it that her statement to accounting staff that the ABC Client Payment was a "licensing payment," that is, a Prior Matter royalty payment, was incorrect and that her statement had been based on his own false and misleading representations and omissions to Ms. Nowak.

36.     As an employee and fiduciary of Polsinelli, and because he knew Ms. Nowak's statements to accounting staff were incorrect and had been based on his own false and misleading statements to Ms. Nowak, Mastriani had a duty to speak and correct the incorrect statements before accounting staff later wired the ABC Client Payment to AMS.

37.     Mastriani failed to do so.

38.     On or about June 23, 2025, ABC Client paid to Polsinelli a contingent fee of $1,542,385.21 (the ABC Client Payment) in connection with the Client Recovery under the terms of the Engagement Letter, and on June 25, 2025, Polsinelli accounting staff wired the ABC Client Payment to AMS.

39.     Mastriani then caused AMS to transfer all or a portion of the ABC Client Payment to himself personally and others associated with AMS.

40.     After Polsinelli accounting staff wired the ABC Client Payment to AMS on or about June 25, 2025, Mastriani gave notice to Polsinelli on July 17, 2025, that he was leaving the firm.

41.     Thereafter, firm management inquired of the status of the ABC Client Contingency Fee Matter and learned that Mastriani had fraudulently and improperly caused Polsinelli staff to wire the ABC Client Payment to AMS.

42.     Multiple demands have since been made by Polsinelli to Mastriani to return the ABC Client Payment, including in a letter dated August 1, 2025.

43.     On or about August 4, 2025, Mastriani responded to Polsinelli's demand letter of August 1, 2025, refusing to return the ABC Client Payment.

44.     However, on or about August 6, 2025, Mastriani wire transferred to Polsinelli the sum of $281,596.48 (the "Mastriani Wire") with the remittance information of "Mastriani Payment".

45.     On August 6, 2025, Polsinelli asked Mastriani to state the purpose of the Mastriani Wire and provide an explanation as to the amount of the Mastriani Wire.

46.     On August 7, 2025, Mastriani emailed Polsinelli, stating that he had distributed $375,000 from AMS to another AMS owner and argued that the only portion of the ABC Client Payment that he thought Polsinelli had a right to receive was $939,654.94, which he argued was the Client Recovery in the ABC Client Contingency Fee Matter; that he only received $703,991.20 from AMS "as (his) portion of the contingency payment attributable to" the Client Recovery in the ABC Client Contingency Fee Matter; that he claimed to be entitled to $422,394.72, consisting of 45% of the sum of $939,654.94; that he was giving Polsinelli the sum of $281,146.48, which he claimed was his "share of the (Client Recovery in the ABC Client Contingency Fee Matter), less the amount owed to (him) under the correct formula, $422,394.72."

9

47.     While Mastriani's arguments and calculations are false and baseless, his August 7, 2025 communication constitutes an admission that he converted and diverted funds to himself that belonged to Polsinelli.

48.     Except for the Mastriani Wire, Defendants have refused to return the ABC Client Payment, despite repeated demands.

49.     As a result, Polsinelli has been harmed and deprived of funds rightfully owed to it under contract and in equity, consisting of the ABC Client Payment, less the Mastriani Wire.  As used hereinafter, the term "Remaining ABC Client Payment" shall mean the ABC Client Payment, less the Mastriani Wire.

50.     Mastriani's and AMS's actions were intentional, willful, and wanton, thereby justifying an award of exemplary or punitive damages.

## CLAIMS FOR RELIEF

### Count I – Fraud
(Against Mastriani)

51.     Plaintiff hereby re-alleges and incorporates paragraphs 1 through 50, above, as though fully set forth herein

52.     Mastriani knowingly made false Representations to Polsinelli staff to induce the transfer of the ABC Client Payment in the amount of $1,542,385.21 to AMS.

53.     The Representations were representations of existing facts at the time they were made by Mastriani, and they included misrepresentations by omission.

54.     The Representations were false at the time Mastriani made or communicated them.

55.     Mastriani was aware that his Representations were false at the time he made or communicated them.

10

56. Mastriani intended that Polsinelli rely on his Representations and that Polsinelli release and transfer the ABC Client Payment to Mastriani and AMS in reliance on his Representations.

57. Polsinelli reasonably relied on the Representations.

58. Polsinelli staff was unaware and ignorant of the falsity of the Representations.

59. Mastriani's Representations were material to Polsinelli's transfer of the ABC Client Payment to Mastriani and AMS.

60. Polsinelli had a right to rely on Mastriani's Representations and was justified in doing so, given Mastriani's position as an attorney with Polsinelli, and the expectation that he would observe his fiduciary duties to Polsinelli and its clients.

61. As a proximate result, Polsinelli suffered damages in the amount of $1,542,385.21, less the Mastriani Wire.

62. Mastriani's actions were intentional, willful, and wanton, thereby justifying an award of exemplary or punitive damages.

WHEREFORE, Polsinelli prays this honorable Court for a judgment against Defendant Louis Mastriani in the total sum of at least $1,542,385.21, less the Mastriani Wire, together with interest thereon at the judgment rate, for exemplary or punitive damages, and together with attorneys' fees and costs of collection such as are on account with the undersigned counsel at the time of entry of judgment hereon; and for such other and further relief as the Court deems just and proper.

## Count II – Breach of Fiduciary
## Duty of Loyalty and Good Faith
(Against Mastriani)

63.     Plaintiff hereby re-alleges and incorporates paragraphs 1 through 62, above, as though fully set forth herein.

64.     As an attorney of Polsinelli, Mastriani owed fiduciary duties of loyalty and good faith to Polsinelli.

65.     Mastriani breached these fiduciaries duties to Polsinelli including but not limited to, by

a.     making false and misleading representations, including the Representations, to Polsinelli staff to induce them to transfer $1,542,385.21 to AMS, in which he had a financial interest,

b.     omitting material facts when requesting that Polsinelli staff transfer $1,542,385.21 to AMS, in which he had a financial interest,

c.     requesting that Polsinelli transfer $1,542,385.21 AMS when AMS was not entitled to the payment,

d.     retaining the $1,542,385.21 payment after demand for its return was made by Polsinelli,

e.     failing to fully disclose all material facts to Polsinelli, including to management, in connection with ABC Client Recovery and ABC Client Payment, and

f.     otherwise breaching his fiduciary duties of loyalty and good faith.

66.     As a proximate result, Polsinelli suffered damages in the amount of $1,542,385.21, less the Mastriani Wire.

12

67. Mastriani's actions were intentional, willful, and wanton, thereby justifying an award of exemplary or punitive damages.

WHEREFORE, Polsinelli prays this honorable Court for a judgment against Defendant Louis Mastriani in the total sum of at least $1,542,385.21, less the Mastriani Wire, together with interest thereon at the judgment rate, for exemplary or punitive damages, and together with attorneys' fees and costs of collection such as are on account with the undersigned counsel at the time of entry of judgment hereon; and for such other and further relief as the Court deems just and proper.

**Count III – Conversion**
(Against Mastriani and AMS)

68. Plaintiff hereby re-alleges and incorporates paragraphs 1 through 67, above, as though fully set forth herein.

69. Under Missouri law, "[p]roof of conversion can be shown in one of three ways: (1) by tortious taking; (2) by any use or appropriation to the use of the person in possession, indicating a claim of right in opposition to the rights of the owner; (3) by a refusal to give up possession to an owner upon demand, even though the defendant's original possession of the property was proper." *Willis v. Unites States of America*, No. 6:2016cv03251 - Document 260, *8 (W.D. Mo. 2020), citing, *Northland Ins. Co. v. Chet's Tow Serv., Inc*., 804 S.W.2d 54, 56 (Mo. App. W.D. 1991) (citation omitted) (emphasis added).

70. Although "conversion does not ordinarily lie for money represented by a general debt," . . . "the rule is otherwise as to funds placed in the custody of another for a specific purpose and their diversion for other than such specified purpose subjects the holder to liability in conversion." *Express Scripts, Inc. v. Walgreen Co*., 2009 WL 4574198, *5 (ED Mo. Dec. 3, 2009), citing, *Dillard v. Payne*, 615 S.W.2d 53, 55 (Mo. banc 1981) (holding that the plaintiff's allegations

13

of placing funds in the custody of the law firm for a specific purpose and the subsequent diversion by the attorneys of those funds for their own use stated a claim for conversion, and stating specifically that "funds placed in the custody of another for a specific purpose and their diversion for other than such specified purpose subjects the holder to liability in conversion").

71.     Moreover, this Court has recognized that a conversion claim is stated against an attorney with respect to funds placed in his custody for a specific purpose, even if that attorney diverted those funds for the purpose of paying his attorneys' fees. *Vogt v. State Farm Life Ins. Co*., 2017 WL 1498073, *6 (WD Mo. Apr. 26, 2017), citing *Dillard* at 55 (plaintiff stated a conversion claim, despite the attorney's clear authority to withdraw money from the trust account and even though the amount converted was commingled with money the attorney rightfully withdrew).

72.     Polsinelli had a possessory interest in the ABC Client Payment in the amount of $1,542,385.21 and has a current possessory interest in the Remaining ABC Client Payment.

73.     Defendants wrongfully took possession of the ABC Client Payment with the intent to exercise control over it, and deprived Polsinelli of possession.

74.     Polsinelli is entitled to the return of the Remaining ABC Client Payment, plus damages caused by Mastriani's and AMS' conversion of the ABC Client Payment.

75.     As a proximate result of such conversion, Polsinelli suffered damages in the amount of $1,542,385.21.

76.     Mastriani's and AMS's actions were intentional, willful, and wanton, thereby justifying an award of exemplary or punitive damages.

WHEREFORE, Polsinelli prays this honorable Court for a judgment against Defendants Louis Mastriani and AMS TRADE LLP in the total sum of at least $1,542,385.21, less the

Mastriani Wire, together with interest thereon at the judgment rate, for exemplary or punitive damages, and together with attorneys' fees and costs of collection such as are on account with the undersigned counsel at the time of entry of judgment hereon; and for such other and further relief as the Court deems just and proper.

### Count IV – Money Had and Received
(Against Mastriani and AMS)

77.     Plaintiff hereby re-alleges and incorporates paragraphs 1 through 76, above, as though fully set forth herein.

78.     In Missouri, "(a)n action for money had and received is 'based . . . on equitable principles permitting recovery of money from defendant that, in all justice and fairness, the evidence shows defendant should not keep.'" *Kubley v. Brooks*, 141 S.W.3d 21, 29 (Mo. banc 2004).

79.     "An action for money had and received is proper where the defendant received money from the plaintiff under circumstances that in equity and good conscience call for defendant to pay it to plaintiff." *Palo v. Stangler*, 943 S.W.2d 683, 684 (Mo. App. E.D. 1997).

80.     At all relevant times, Polsinelli was entitled to receive and retain the ABC Client Payment.

81.     At all relevant times, the Defendants received the ABC Client Payment that was the property of Polsinelli, and which they weren't entitled to receive or retain.

82.     As a result, the Defendants received the ABC Client Payment and the benefit of the ABC Client Payment under circumstances that in equity and good conscience call for the Defendants to now repay the Remaining ABC Client Payment to Polsinelli.

83.     As a direct and proximate result, Polsinelli suffered damages in the amount of $1,542,385.21.

105394251.15

WHEREFORE, Polsinelli prays this honorable Court for a judgment against Defendants Louis Mastriani and AMS TRADE LLP in the total sum of at least $1,542,385.21, less the Mastriani Wire, together with interest thereon at the judgment rate, and together with attorneys' fees and costs of collection such as are on account with the undersigned counsel at the time of entry of judgment hereon; and for such other and further relief as the Court deems just and proper.

## Count V – Unjust Enrichment
(Against Mastriani and AMS)

84.     Plaintiff hereby re-alleges and incorporates paragraphs 1 through 83, above, as though fully set forth herein.

85.     "There are three elements to a claim of unjust enrichment under Missouri law. First, a plaintiff must confer a benefit and enrich a defendant. Second, the enrichment must be at the expense of the plaintiff. Finally, the Court must determine that it would be unjust for the defendant to retain the benefit." *Hawkins v. Nestle U.S.A., Inc.*, Case No. 4:17CV205 HEA (Mo. E.D. Feb. 7, 2018), citing *Miller v. Horn*, 254 S.W.3d 920, 924 (Mo. App. 2008).

86.     The diversion of the ABC Client Payment conferred a benefit on the Defendants and enriched the Defendants.

87.     Defendants received and retained the ABC Client Payment in the amount of $1,542,385.21 that rightfully belonged to Plaintiff.

88.     The diversion of the ABC Client Payment and enrichment of the Defendants was at the expense of Polsinelli.

89.     It would be unjust and inequitable for the Defendants to retain the Remaining ABC Client Payment and the benefit of the diversion of the ABC Client Payment.

90. As a direct and proximate result of the false Representations and diversion of the ABC Client Payment to AMS and Mastriani, Polsinelli suffered damages in the amount of $1,542,385.21, less the Mastriani Wire.

WHEREFORE, Polsinelli prays this honorable Court for a judgment against Defendants Louis Mastriani and AMS TRADE LLP in the total sum of at least $1,542,385.21, less the Mastriani Wire, together with interest thereon at the judgment rate, and together with attorneys' fees and costs of collection such as are on account with the undersigned counsel at the time of entry of judgment hereon; and for such other and further relief as the Court deems just and proper.

## Count VI – Imposition of a Constructive Trust
### (Against Mastriani and AMS)

91. Plaintiff hereby re-alleges and incorporates paragraphs 1 through 90, above, as though fully set forth herein.

92. Under Missouri law, a constructive trust is an "equitable devise employed by courts of equity to remedy a situation where a party has been wrongfully deprived of some right, title or interest in property as a result of fraud or violation of confidence or faith reposed in another." *See*, *Estate of David*, 954 S.W.2d 374,379 (Mo. App. 1997), citing *Imground v. LaRue*, 851 S.W. 2d 40, 43-44, (footnote 2), (Mo. App. E.D. 1993) ("A constructive trust is best understood as an equitable remedy used in a variety of circumstances to set aside wrongful ownership gained through real or constructive fraud). *Id*. at 44.

93. "A constructive trust is a method by which a court exercises its equitable powers to 'remedy a situation where a party has been wrongfully deprived of some right, title, benefit or interest in property as a result of fraud or in violation of confidence or faith reposed in another.'" *Fix v. Fix*, 847 S.W.2d 762 (Mo. banc 1993), citing, *Schultz v. Schultz*, 637 S.W.2d 1, 4 (Mo. banc 1982); see also *Suhre v. Busch*, 123 S.W.2d at 15.

17

94.     "Either actual or constructive fraud is sufficient to support imposition of a constructive trust." *Id.*, citing, *Swon v. Huddleston*, 282 S.W.2d 18, 25 (Mo. 1955).

95.     "The object of the constructive trust is to restore to the rightful owner the property wrongfully withheld by the defendant." *Id.*, citing, *March v. Gerstenschlager*, 436 S.W.2d 6, 8 (Mo. 1969).

96.     At all relevant times, Polsinelli was entitled to receive the ABC Client Payment and is the rightful owner of the ABC Client Payment.

97.     At all relevant times, the Defendants received the ABC Client Payment that was the property of Polsinelli, and which they weren't entitled to receive or keep.

98.     The diversion of the ABC Client Payment by Mastriani to AMS and Mastriani was conducted by the actual or constructive fraud of Mastriani, including the use of the false Representations made to Polsinelli staff.

99.     Equity requires that the Remaining ABC Client Payment (consisting of the ABC Client Payment of $1,542,385.21), less the Mastriani Wire, and any traceable proceeds thereof, be held in a constructive trust for the benefit of Plaintiff.

100.    Because of the actual or constructive fraud of Mastriani, the imposition of a constructive trust with respect to the Remaining ABC Client Payment or the proceeds thereof is now appropriate and necessary.

WHEREFORE, Polsinelli prays this honorable Court its Order imposing a constructive trust against the Remaining ABC Client Payment, and all proceeds thereof in the hands of Defendants Louis Mastriani, AMS TRADE LLP, or any other persons or entities in possession of the same, and for this Court's judgment against Defendants Louis Mastriani and AMS TRADE LLP in the total sum of at least $1,542,385.21, less the Mastriani Wire, together with interest

thereon at the judgment rate, and together with attorneys' fees and costs of collection such as are on account with the undersigned counsel at the time of entry of judgment hereon; and for such other and further relief as the Court deems just and proper.

## Count VII – Missouri Uniform
## Fraudulent Transfer Act, § 428.005, *et seq.*
(Against Mastriani and AMS)

101.    Plaintiff hereby re-alleges and incorporates paragraphs 1 through 100, above, as though fully set forth herein.

102.    For the reasons set forth hereinbelow, the provisions of Missouri Revised Statutes §§ 428.005, *et seq.*, known as the "Uniform Fraudulent Transfer Act," (the "UFTA"), apply to the actions of Mastriani and AMS in causing Polsinelli's staff to release and transfer the ABC Client Payment to Mastriani and AMS in reliance on the false Representations.

103.    Missouri Revised Statute § 428.024 provides in relevant part:

**Transfers fraudulent as to present and future creditors. —**

1.      A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1)    With actual intent to hinder, delay, or defraud any creditor of the debtor;

. . .

2.      In determining actual intent under subdivision (1) of subsection 1 of this section, consideration may be given, among other factors, to whether:

(1)    The transfer or obligation was to an insider;

(2)    The debtor retained possession or control of the property transferred after the transfer;

(3)    The transfer or obligation was disclosed or concealed;

(4)    Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

19

(5)     The transfer was of substantially all the debtor's assets;

(6)     The debtor absconded;

(7)     The debtor removed or concealed assets;

(8)     The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9)     The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10)    The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11)    The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

104.    Missouri Revised Statute § 428.024 provides in relevant part:

**Remedies of creditors.** —

1.      In an action for relief against a transfer or obligation under sections 428.005 to 428.059, a creditor, subject to the limitations in section 428.044, may obtain:

(1)     Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2)     An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by applicable laws of this state;

(3)     Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

(a)     An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(b)     Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(c)     Any other relief the circumstances may require.

105.    Missouri Revised Statute § 428.009 provides that as used in sections 428.005 to 428.059, the following terms mean:

(3)     "**Claim**", a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

(4) "**Creditor**", a person who has a claim.

(5) "**Debt**", liability on a claim.

(6) "**Debtor**", a person who is liable on a claim.

106. Under the UFTA, Polsinelli's right to payment of the ABC Client Payment is a "Claim."

107. Under the UFTA, Polsinelli is a "Creditor" with respect to its right to payment of the ABC Client Payment.

108. Under the UFTA, the liability of Mastriani and AMS to return the ABC Client Payment to Polsinelli is a "Debt."

109. Under the UFTA, Mastriani and AMS are each a Debtor with respect to their liability to return the ABC Client Payment to Polsinelli.

110. Under the UFTA, Mastriani's inducement of Polsinelli staff to cause the transfer of the ABC Client Payment in the amount of $1,542,385.21 to AMS was a transfer made or obligation incurred by Mastriani and AMS that is fraudulent as to Polsinelli where it was made with the actual intent to hinder, delay, or defraud Polsinelli.

111. Mastriani's actions established his actual intent to hinder, delay, or defraud Polsinelli in multiple respects, including one or more of the following:

a. The transfer of the ABC Client Payment was to AMS, an insider;

b. Mastriani retained possession or control of the ABC Client Payment after the transfer;

c. The true nature and reasons for the transfer or obligation requested by Mastriani was concealed from Polsinelli and its staff;

21

d.      Mastriani made the false Representations to Polsinelli staff and others concerning the true nature of the ABC Client Payment and the transfer of the ABC Client Payment to be AMS and himself;

e.      Mastriani left Polsinelli soon after he caused the transfer of the ABC Client Payment to be made to AMS and himself;

f.      Upon information and belief, Mastriani was aware that he intended to leave Polsinelli at the time he caused the transfer of the ABC Client Payment to be made to AMS and himself;

g.      Mastriani made efforts to delay the payment of the ABC Client Payment until he left Polsinelli, or alternatively to induce or convince ABC Client to make the ABC Client Payment to his new firm after he left Polsinelli; and

h.      Mastriani and AMS further removed or concealed the ABC Client Payment by making further transfers of such funds, including transfers to one or more other individuals.

112.    By reason of § 428.024.1(1) of the UFTA, Polsinelli is entitled to the avoidance of the transfer of the ABC Client Payment to the extent necessary to satisfy Polsinelli's claim to the ABC Client Payment.

113.    By reason of § 428.024.1(2) of the UFTA, Polsinelli is entitled to an attachment or other provisional remedy against the Remaining ABC Client Payment transferred in accordance with the procedure prescribed by applicable laws of this state.

114.    By reason of § 428.024.1(3)(a) of the UFTA, Polsinelli is entitled to an injunction against further disposition by Mastriani, AMS, or both, of the Remaining ABC Client Payment

transferred or of other property, subject to applicable principles of equity and in accordance with applicable rules of civil procedure.

115.    By reason of § 428.024.1(3)(b) of the UFTA, Polsinelli is entitled to the appointment of a receiver to take charge of the Remaining ABC Client Payment transferred or of other property of Mastriani and AMS.

116.    By reason of § 428.024.1(3)(c) of the UFTA, Polsinelli is entitled to any other relief the circumstances may require.

117.    Mastriani's and AMS's actions were intentional, wilful, and wanton, thereby justifying an award of exemplary or punitive damages.

WHEREFORE, Polsinelli prays this honorable Court for its Orders, as follows:

A.    An Order avoiding the transfer of the ABC Client Payment to the extent necessary to satisfy Polsinelli's claim to the ABC Client Payment, pursuant to § 428.024.1(1) of the UFTA;

B.    An Order directing the issuance of a writ of attachment or other provisional remedy against the Remaining ABC Client Payment transferred or other property of Mastriani and AMS in accordance with the procedure prescribed by applicable laws of this state, pursuant to § 428.024.1(2) of the UFTA;

C.    An Order directing the issuance of an injunction against further disposition by Mastriani, AMS, or both, of the Remaining ABC Client Payment transferred or of other property, subject to applicable principles of equity and in accordance with applicable rules of civil procedure, pursuant to § 428.024.1(3)(a) of the UFTA;

D.     An Order directing the appointment of a receiver to take charge of the Remaining ABC Client Payment transferred or of other property of Mastriani and AMS, pursuant to § 428.024.1(3)(b) of the UFTA;

E.     A judgment against Defendants Louis Mastriani and AMS TRADE LLP in the total sum of at least $1,542,385.21, less the Mastriani Wire, together with interest thereon at the judgment rate, for exemplary or punitive damages, and together with attorneys' fees and costs of collection such as are on account with the undersigned counsel at the time of entry of judgment hereon; and

F.     Such other Orders as to the Court may seem just and proper in the premises.

### Count VIII – Injunctive Relief
(Against Mastriani and AMS)

118.     Plaintiff hereby re-alleges and incorporates paragraphs 1 through 117, above, as though fully set forth herein.

119.     Mastriani has already brazenly misappropriated $1,542,385.21 from Polsinelli, his former employer, and has refused to return the funds despite repeated demands.

120.     And Mastriani has admitted in an August 7, 2025, email that he caused AMS to divert $375,000 of the ABC Client Payment to a third-party and a significant portion of the ABC Client Payment to himself.

121.     There is a real and substantial likelihood that Defendants will continue to commit further harmful acts, including the diversion of the Remaining ABC Client Payment from both Mastriani and AMS accounts, if not enjoined from doing so.

122.     Polsinelli is likely to prevail on the merits of its claims against Defendants.

123.     Polsinelli seeks an order prohibiting the transfer or dissipation of the ABC Client Payment or the remaining proceeds thereof, whether held by AMS or Mastriani.

24

124.    Defendants' conduct has resulted, and will continue to result, in irreparable injury and harm to Polsinelli, including, without limitation, the potential loss or dissipation of the Remaining ABC Client Payment pending a determination of the controversy between the parties.

125.    If the requested relief is not granted, a substantial amount of money may be dissipated, hidden, intermingled with other assets, or otherwise unavailable for recovery.

126.    The Remaining ABC Client Payment is identifiable as a specific *res* or fund and is thus subject to an injunction preventing it from being dissipated, hidden, intermingled with other assets, or otherwise unavailable for recovery.

127.    The requested injunctive relief serves to preserve the status quo, preserve the Remaining ABC Client Payment, and secure it for the party to whom it may be adjudged to belong on final decree.

128.    The potential harm to Polsinelli if Defendants are not enjoined from transferring, dissipating, or hiding the Remaining ABC Client Payment, or otherwise intermingling it with other assets or making it unavailable for recovery, is far greater than any harm Defendants may suffer if injunctive relief is granted.

129.    And, Polsinelli lacks an adequate remedy at law.

130.    Injunctive relief is not adverse to the public interest.

131.    Polsinelli is in position to post a bond in the amount the Court deems necessary.

WHEREFORE, Polsinelli prays this honorable Court for its Orders, as follows:

    A.    A temporary restraining order against Mastriani and AMS, prohibiting the transfer or dissipation of the Remaining ABC Client Payment or the remaining proceeds thereof, as necessary to protect and satisfy Polsinelli's claim to the ABC Client Payment;

    B.    A preliminary injunction against Mastriani and AMS, prohibiting the transfer or dissipation of the Remaining ABC Client Payment or the remaining proceeds

thereof, as necessary to protect and satisfy Polsinelli's claim to the Remaining ABC Client Payment; and

C.     A permanent injunction against Mastriani and AMS, prohibiting the transfer or dissipation of the Remaining ABC Client Payment or the remaining proceeds thereof, as necessary to protect and satisfy Polsinelli's claim to the Remaining ABC Client Payment;

D.     An Order directing the issuance of an injunction against further disposition by Mastriani, AMS, or both, of the Remaining ABC Client Payment transferred or of other property, subject to applicable principles of equity and in accordance with applicable rules of civil procedure, pursuant to § 428.024.1(3)(a) of the UFTA; and

E.     Such other Orders as to the Court may seem just and proper in the premises.

**Count IX – Attachment**
(Against Mastriani and AMS)

132.     Plaintiff hereby re-alleges and incorporates paragraphs 1 through 131, above, as though fully set forth herein.

133.     Section 521.010 RSMo. provides for the issuance of a Writ of Attachment against property of a defendant.  In relevant part, it provides:

521.010. Attachment, when issued — parties to — causes for. — In any court having competent jurisdiction, the plaintiff in any civil action may have an attachment against the property of the defendant, or that of any one or more of several defendants, in any one or more of the following cases:

. . .

   (12)  Where the damages for which the action is brought are for injuries arising from the commission of some felony or misdemeanor, . . .

. . .

   (14)  Where the debt sued for was fraudulently contracted on the part of the debtor.

26

134.    Mastriani's actions in connection with his false Representations to Polsinelli staff to cause them to release and transfer the ABC Client Payment to Mastriani and AMS in reliance thereon are and were a violation of Missouri Revised Statute § 570.030 RSMo. (stealing).

135.    An attachment against the property of the Defendants is now appropriate because the damages for which this action is brought are for injuries arising from the commission of a felony by Mastriani, and because the debt sued for was fraudulently created by the false Representations of Mastriani to Polsinelli staff to cause them to release and transfer the ABC Client Payment to Mastriani and AMS.

136.    At a minimum, all proceeds of the Remaining ABC Client Payment should now be subject to attachment.

137.    For all of the above reasons, the Remaining ABC Client Payment should now be subject to a Writ of Attachment.

WHEREFORE, Polsinelli prays this honorable Court for its Order directing the Clerk of the Court to issue a Writ of Attachment as to the Remaining ABC Client Payment, preventing the Defendants from transferring, concealing, or disposing of any of the Remaining ABC Client Payment without first obtaining an Order of this Court, and for such other and further relief as the Court deems just and proper.

### Count X – Accounting
(Against Mastriani and AMS)

138.    Plaintiff hereby re-alleges and incorporates paragraphs 1 through 137, above, as though fully set forth herein.

139.    In Missouri, "(f)our elements are required to establish equitable jurisdiction for an accounting: the need for discovery, the complicated nature of the accounts, the existence of a fiduciary or trust relationship and the inadequacy of legal remedies." *Shaner v. System Integrators,*

27

*Inc.*, 63 S.W.3d 674, 677 (2001), citing *Ballesteros v. Johnson*, 812 S.W.2d 217, 220 (Mo. App. 1991). "Of these, the existence of a fiduciary relationship is the most critical element to support the exercise of equitable jurisdiction." *Id.*

140.  In or around January 2021, Mastriani joined Polsinelli as a senior attorney.

141.  Because of his status as an attorney employed by Polsinelli, Mastriani had a fiduciary relationship with Polsinelli, and he owed fiduciary duties to Polsinelli and its clients.

142.  The diversion of the ABC Client Payment by Mastriani to AMS and Mastriani, and the further transfers of the ABC Client Payment by Mastriani and AMS, give rise to the need for discovery with respect to the disposition of the ABC Client Payment.

143.  Mastriani and AMS further removed or concealed the ABC Client Payment by making further transfers of such funds, including transfers to one or more other individuals, thereby complicating the nature of the current status of the ABC Client Payment and its proceeds, and any accounts in which it is now held.

144.  Polsinelli has inadequate legal remedies with respect to the ABC Client Payment and the disposition thereof by Mastriani and AMS.

WHEREFORE, Polsinelli prays this honorable Court for its Order directing that an equitable accounting be made with respect to the ABC Client Payment, and for such other and further relief as the Court deems just and proper.

## Count XI – Appointment of a Receiver
(Against Mastriani and AMS)

145.  Plaintiff hereby re-alleges and incorporates paragraphs 1 through 144, above, as though fully set forth herein.

28

146.     Section 515.500 et seq. of the Revised Statutes of Missouri, known as the "Missouri Commercial Receivership Act" (the "Act") provides for the appointment of a receiver under the circumstances and based on the grounds set forth in the Act.

147.     Pursuant to § 515.510.1(2) of the Act, this Court has the power to appoint a receiver "(i)n an action in which the person seeking appointment of a receiver has a(n) . . . interest in property . . . , and . . . (t)he appointment of a receiver with respect to the property . . . is necessary to keep and preserve the property . . . or to protect any business or business interest concerning the property . . ."

148.     Pursuant to § 515.510.1(7) of the Act, this Court has the power to appoint a receiver "(u)pon attachment of real or personal property if the property attached is . . . in danger of waste, impairment, or destruction or if a debtor has absconded with, secreted, or abandoned the property, and it is necessary to collect, conserve, manage, control, or protect it, or to dispose of it promptly, or if the court determines that the nature of the property or the exigency of the case otherwise provides cause for the appointment of a receiver."

149.     Additionally, pursuant to § 515.510.1(14) of the Act, this Court has the power to appoint a receiver to prevent irreparable injury to the person or persons requesting the appointment of a receiver with respect to the debtor's property.

150.     Additionally, pursuant to § 521.300 RSMo., Polsinelli is also entitled to the appointment of a receiver in connection with the writ of attachment sought in Count IX, above, to take charge of the Defendants' properties. Section 521.300 provides in relevant part as follows:

> 521.300. **Receiver appointed, by whom — oath and bond required — who may sue on bond.** — The court, or in vacation the judge, may in a proper case, on the application of the plaintiff, appoint a receiver, who shall take an oath faithfully to discharge his duty, and shall enter into bond to the state of Missouri, in such sum as the court or judge may direct, and with security approved by the court or judge, for the faithful performance of his duty as receiver, and that he will pay over all

29

money and account for all property which may come into his hands by virtue of his appointment, at such times and in such manner as the court may direct. . . .

151. The Writ of Attachment sought in Count IX, above, justifies the appointment of a receiver because the damages for which this action is brought are for injuries arising from the commission of felonies by the Defendants and the use of false Representations by Mastriani.

152. The appointment of a receiver to enforce a Writ of Attachment is also the least intrusive method of preserving the ABC Client Payment because the receiver and Writ of Attachment merely prevent the Defendants from transferring the ABC Client Payment without the Receiver's and Court's approval, and the receiver can take direction from the Court on any disposition of the ABC Client Payment.

153. The appointment of a receiver is the appropriate immediate remedy in this case. This Court has previously applied the Act to issue an Order Appointing Receiver over properties and assets in connection with a complaint alleging that the defendants therein "embezzled funds and improperly disbursed funds to themselves." *See*, *Peoples Bank of Moniteau County v. Hampton*, 18-cv-04099-WJE, Doc. 18 (May 29, 2018).

154. Additionally, irreparable harm will be caused to Polsinelli if the Defendants are permitted to further transfer the Remaining ABC Client Payment.

155. Because of the foregoing facts, Polsinelli is entitled to the appointment of a limited receiver by Order of this Court to protect and preserve the Remaining ABC Client Payment so as to preserve it for execution upon the entry of a judgment for money damages in favor of Polsinelli, as authorized and mandated under the Act, and to enable the Court to determine the parties entitled to the Remaining ABC Client Payment.

156. Polsinelli has no adequate remedy at law (other than under § 515.500 et. seq. RSMo., Federal Rule of Civil Procedure 66, and § 521.300 RSMo) and needs this Court's Order

Appointing a Receiver to protect its interests in the ABC Client Payment and to collect, keep, preserve, and maintain the Remaining ABC Client Payment.

157.     The appointment of a limited receiver pursuant to RSMo. § 515.515, Federal Rule of Civil Procedure 66, and § 521.300 RSMo. is appropriate for the foregoing purposes, with the power to take all actions of a limited receiver as defined in Section 515.515, and with the enumerated powers set forth below.

158.     Polsinelli seeks the appointment of Michael F. Flanagan as a limited receiver (the "Receiver") with respect to the ABC Client Payment. The Receiver is suitable and capable, with knowledge of funds such as the ABC Client Payment. A true copy of the Declaration of Michael F. Flanagan is filed concurrently herewith and incorporated herein by reference as **Exhibit 2**. The resume of the Receiver is attached to said Declaration and incorporated therein by reference as **Exhibit 2-A**.

159.     Polsinelli has separately filed its Motion for Appointment of Receiver and proposed Order Appointing Receiver, and the same are herewith incorporated by reference in this Petition.

WHEREFORE Polsinelli hereby prays this honorable Court for its Order providing that Michael F. Flanagan be appointed to act and serve as a limited receiver for the ABC Client Payment and any proceeds thereof, and specifically providing for the following:

A.     The Receiver shall have all the powers and authority granted to receivers under RSMo. § 515.500, et seq. (the Act) and the full power and authority to:

i.     Assemble, take exclusive control and possession of, collect, and manage the Remaining ABC Client Payment, and take all actions deemed reasonable and appropriate by the Receiver to preserve the Remaining ABC Client Payment and enforce all rights in the Remaining ABC Client Payment;

ii.     Take all actions the Receiver deems reasonable and appropriate to prevent waste to and to protect and safeguard the Remaining ABC Client Payment;

iii.    Enjoin all persons, firms, or corporations, and any persons acting under their direction, or any persons or entities controlling any part of the ABC Client Payment, less the Mastriani Wire, from in any manner disturbing the Receiver's possession and control of the Remaining ABC Client Payment, and ordering that such persons and entities are prohibited and restrained from disposing of, dissipating, mishandling or misappropriating the ABC Client Payment, all until further order of the Court;

iv.     Communicate with any persons on any matters related to the ABC Client Payment, and enter any contracts, agreements, consent orders, memoranda, or other documents as the Receiver may determine appropriate with respect to the ABC Client Payment.

v.      Gain access to the books and records and all information necessary to collect, manage and preserve the Remaining ABC Client Payment;

vi.     If requested by the Receiver, require all persons managing or controlling the Remaining ABC Client Payment and their agents and contractors to turn over and deliver possession to the Receiver all of the Remaining ABC Client Payment subject to this Order, without any right of offset or recoupment, including: (1) all contracts and other documents relating to the ABC Client Payment, and all communications and correspondence pertinent thereto; (2) all deposits and all other sums relating to the ABC Client Payment, and any accountings of any of the foregoing; (3) any and all documents pertaining to ongoing or potential litigation

32

with respect to the ABC Client Payment; (4) any and all communications and correspondence pertinent thereto; and (5) all other books, records, contracts, accounts, papers and other such items of information as will enable the effective control and conservation of the Remaining ABC Client Payment;

vii.     Institute, prosecute, defend, compromise, or intervene in or become a party to such actions or proceedings in state or federal court relating to the Remaining ABC Client Payment, and those necessary to recover or dispose of the Remaining ABC Client Payment, for the carrying out of the terms and provisions of the Court's order appointing the Receiver, and/or to defend against any action brought against the Receiver acting in such capacity;

viii.     Retain, hire, or discharge such accountants and attorneys as may in the Receiver's judgment be advisable or necessary in the control or custody of the Remaining ABC Client Payment;

ix.     Retain legal counsel to enforce the Receiver's duties, which counsel may be the same as counsel representing Polsinelli, and to retain such other legal counsel as may be necessary to protect its interests;

x.     Retain any other person, firm, or corporation that the Receiver deems necessary to carry out his duties to collect or control the Remaining ABC Client Payment;

xi.     Negotiate and execute any contracts or agreements needed in connection with the Remaining ABC Client Payment;

xii.     Prepare and file any federal and state income tax returns that may be needed in connection with the Remaining ABC Client Payment, or retain any

33

accountants or tax preparers for this purpose, except that this authorization shall not impose any duty on the Receiver to prepare or file any such tax returns, and the obligation to do so shall remain with the entity or entities ordinarily responsible for doing so; and

xiii.   Undertake all actions specifically set forth in this Complaint, as well as to exercise the usual and customary powers afforded to a receiver under Missouri law (except as otherwise limited by any order of this Court), until further order of this Court.

B.   All persons, firms, and corporations holding any records concerning the ABC Client Payment shall immediately turn over to the Receiver the Remaining ABC Client Payment, all files, documents, records, and instruments related to the ABC Client Payment and any proceeds therefrom.

C.   Pursuant to RSMo. § 515.575, immediately upon entry of the Order appointing the Receiver, the Defendants and their, employees, managers, and all other persons interested in the ABC Client Payment, are enjoined and stayed from:

i.   Commencing or continuing (including issuing, employing, or serving process) any judicial, administrative, or other action or proceeding against the Properties, or its business operations, that was or could have been commenced before the entry of the Order appointing the Receiver;

ii.   Enforcing against the ABC Client Payment any judgment or order obtained before the Order appointing the Receiver;

iii.     Any act to obtain possession of the Remaining ABC Client Payment from the Receiver, or to interfere with, or exercise control over, the ABC Client Payment;

iv.     Any act to create, perfect, or enforce any lien or claim against the ABC Client Payment, including any exercise of a right of setoff; or

v.     Any act to collect, assess, or recover a claim against the ABC Client Payment that arose before the entry of the Order appointing the Receiver.

D.     All persons who have come into possession of the Remaining ABC Client Payment or any money paid or transferred in connection with the Remaining ABC Client Payment, or any part thereof shall yield and deliver possession of the same to the Receiver immediately upon request thereof.

E.     For all purposes the Receiver appointed by this Order shall be considered a receiver appointed by this Court with the same rights, duties and obligations thereof and with the same relationships to the Court and to the parties to this litigation.

F.     From the date of this Order, the Remaining ABC Client Payment is under the jurisdiction of this Court, and all persons and/or entities except the Receiver are hereby enjoined from prosecuting suits or claims, and transferring, conveying or encumbering the Remaining ABC Client Payment without the consent of the Receiver or Order of this Court.

G.     Considering the appointment of the Receiver as a limited receiver under RSMo. § 515.515, the Receiver shall have no obligations to file such monthly reports with the Court that are ordinarily required of a general receiver under RSMo. § 515.570.

H. The Receiver may apply at any time to the Court, with notice to all other parties in this case, for further instruction and for further power necessary to enable the Receiver to properly fulfill his duties.

I. No person or entity may file suit against the Receiver, in his capacity as Receiver, unless otherwise authorized in advance by this Court.

J. When the Remaining ABC Client Payment has been collected, liquidated, and applied as instructed or ordered by the Court, when this case has been dismissed by Polsinelli, or when Polsinelli consents to the Receiver's discharge, the Receiver may request that he be discharged from his duties in this case and the Receiver shall be so discharged by further order of the Court.

K. The Order appointing the Receiver shall be in effect until terminated by order of this Court and the authority granted to the Receiver shall be self-executing unless the action specifically requires approval.

L. That the Receiver serves with no bond, or the same bond as the Court may set in connection with a Writ of Attachment as to the Remaining ABC Client Payment.

M. Entry of the Court's Order appointing the Receiver shall not in any manner affect, impair or prejudice any of the other rights and remedies of Polsinelli or any of the obligations and liabilities of the Defendants to Polsinelli under applicable law or equity.

## JURY DEMAND

Plaintiff demands trial by jury on all matters that can be tried by a jury.

Respectfully submitted,

POLSINELLI PC


By: /s/ Todd H. Bartels

  TODD H. BARTELS (MO #45677)
  tbartels@polsinelli.com
  900 W. 48th Place, Suite 900
  Kansas City, MO 64112
  (816) 572-4418
  Fax No.: (888) 253-8293

  MICHAEL A. CAMPBELL (MO #35392)
  mcampbell@polsinelli.com
  7676 Forsyth Blvd, Suite 800
  St. Louis, MO 63105
  (314) 889-8000
  Fax No.: (314) 231-1776

  *ATTORNEYS FOR PLAINTIFF*
  *POLSINELLI PC*

105394251.15