# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **POLSINELLI PC,** | ) |
| **Plaintiff,** | ) |
| v. | ) Case No: 4:25-cv-00665 |
| **LOUIS MASTRIANI** | ) |
| and | ) |
| **AMS TRADE LLP** | ) |
| **Defendants.** | ) |

## MOTION FOR APPOINTMENT OF RECEIVER

COMES NOW Plaintiff Polsinelli PC ("Polsinelli"), by and through its undersigned counsel, hereby moves this honorable Court for the appointment of a receiver pursuant to the Missouri Commercial Receivership Act, §515.500, et seq, RSMo. for certain funds described herein (the "Remaining ABC Client Payment," described below) currently held in the possession of Defendants Louis Mastriani ("Mastriani") and AMS TRADE LLP ("AMS") (Mastriani and AMS are collectively referred to herein as the "Defendants"), and other persons or entities to which Defendants transferred any of the Remaining ABC Client Payment.

Although the Complaint in this action also seeks injunctive relief (Count VIII) and the issuance of a Writ of Attachment (Count IX), the appointment of a receiver should make these remedies unnecessary at this time. In support of this Motion, Plaintiff states as follows[1]:

---

[1] Polsinelli refers to the Complaint (the "Complaint") for the factual allegations asserted herein. Unless otherwise defined herein, any term shall have the same meaning set forth in the Complaint.

1

# FACTUAL BACKGROUND

## *The Parties*

1. This is a civil action brought by Polsinelli, a law firm, against the Defendants, who include a former senior attorney with Polsinelli and his former law firm, who converted and improperly caused the disbursement of funds to themselves and others totaling at least $1,542,385.21.

2. Plaintiff Polsinelli PC is a professional corporation and law firm.

3. Defendant AMS TRADE LLP is a limited liability partnership law firm.

4. Defendant Louis Mastriani was formerly a partner of AMS TRADE LLP, and subsequently joined Polsinelli as a senior attorney in or around January 2021.

## *The Complaint*

5. Polsinelli has concurrently filed its Complaint, the primary purposes of which are to:

   (a) Recover damages caused to Polsinelli by Defendants when they converted and improperly caused the disbursement of the ABC Client Payment (defined below) to themselves and others totaling at least $1,542,385.21;

   (b) Seek the issuance of a writ of attachment to preserve the Remaining ABC Client Payment, which constitutes property of Polsinelli;

   (c) Seek the issuance of injunctive relief to preserve the Remaining ABC Client Payment, which constitutes property of Polsinelli; and

   (d) Seek the appointment of a receiver to enforce the writ of attachment and injunction, and to preserve the Remaining ABC Client Payment, which constitutes property of Polsinelli.

6. The Complaint asserts claims for common law fraud; breach of fiduciary duties; conversion; money had and received; unjust enrichment; imposition of a constructive trust; violation of the Missouri Uniform Fraudulent Transfer Act, § 428.005, *et seq*. RSMo.; for injunctive relief; for a prejudgment Writ of Attachment pursuant to § 521.010, *et seq*. RSMo. as applicable under Federal Rule of Civil Procedure 64; for an accounting; and for appointment of a receiver under the Missouri Commercial Receivership Act, § 515.500 *et seq.* RSMo.

*General Allegations*

7. On or about January 3, 2023, Mastriani joined Polsinelli as an employee with the title of Senior Partner, pursuant to the terms of a written offer and term sheet to which Mastriani agreed by signed acknowledgment on October 7, 2022 ("Employment Agreement").

8. Pursuant to the Employment Agreement, Mastriani agreed, among other things, (a) that he would be a full-time attorney/employee with Polsinelli, (b) to terms of compensation, and (c) that he would be subject to the Policies and Procedures Manual of the Polsinelli.[2]

9. Upon joining employment with Polsinelli, Mastriani arranged for a client (referred to herein as "ABC Client") to be transferred from AMS to Polsinelli as its client. (The identity of the ABC Client is withheld for the protection of the ABC Client, but such identity is not necessary to set forth Polsinelli's claims against Defendants).

10. Polsinelli and ABC Client also executed an engagement letter dated March 9, 2023 (the "Engagement Letter"), pursuant to which ABC Client agreed to pay to Polsinelli a contingent

---

[2] Polsinelli's Policies and Procedures Manual provides, among other things, that "[n]o attorney employee may practice his/her profession for any other person or entity, or accept fees for practicing their profession or the referral of legal business from any other person or entity," and "[e]mployees shall not accept gifts (whether in the form of cash, services, or any other nature) from a customer, client, supplier, or other business, other than an ordinary social amenity." Policies and Procedures, p. 57.

3

fee on the "Net Sum Recovered" by the ABC Client after the filing of any complaint against certain adverse parties (referred to herein as the "ABC Client Contingency Fee Matter"). Mastriani acknowledged and concurred that any contingent fee earned and paid by ABC Client in connection with the ABC Client Contingency Fee Matter would be paid to Polsinelli.

11. The Engagement Letter was consistent with Mastriani's Employment Agreement and Polsinelli's Policies and Procedures in that it required ABC Client, as the client of Polsinelli, to pay any contingent fee to Polsinelli, rather than to AMS or Mastriani, an employee of Polsinelli whose terms of compensation were governed by his Employment Agreement.

12. While AMS ceased operations on or about December 31, 2022, Mastriani did not dissolve AMS as an entity upon joining Polsinelli because AMS was still receiving contingent fees on recurring royalty payments it had earned prior to Mastriani joining Polsinelli, including from ABC Client, on other matters not the subject of the March 9, 2023, Engagement Letter (referred to herein as "Prior Matter" or "Prior Matters").

13. Thereafter, ABC Client would, from time to time, remit to Polsinelli contingent fees that AMS previously earned on Prior Matters, in which case Polsinelli would remit the fees to AMS because they had been earned by AMS prior to Mastriani joining Polsinelli as an employee.

14. Consistent with the Engagement Letter, Mastriani himself acknowledged in a March 27, 2023, email discussing the ABC Client Contingency Fee Matter that "the fees and any contingency payments (other than [Prior Matter] royalties) will be paid to Polsinelli."

15. On or about April 30, 2025, ABC Client entered into a favorable settlement agreement in the ABC Client Contingency Fee Matter.

16. On information and belief, ABC Client received a substantial first payment under

that settlement agreement in or about early May 2025, with the remainder to be paid shortly thereafter. By June 5, 2025, all of the payments due under the settlement agreement had been received by ABC Client (the "Client Recovery").

17. On information and belief, by this time, Mastriani was planning to leave his employment with Polsinelli, unbeknownst to Polsinelli.

18. In connection with the ABC Client Payment, ABC Client sent to Polsinelli, via Mastriani, a letter dated June 5, 2025 (the "Payment Letter").

19. In the Payment Letter, ABC Client advised Polsinelli, via Mastriani, that a payment of $1,542,385.21 ("ABC Client Payment") was being made in accordance with an engagement letter between AMS and ABC Client, a subsequent letter transferring all of ABC Client's matters and files to Polsinelli, and a further engagement letter with Polsinelli (the Engagement Letter).[3]

20. Mastriani withheld the Payment Letter and did not initially disclose it to Polsinelli management or staff.

21. On June 5, 2025, after receiving the Payment Letter, Mastriani emailed ABC Client and falsely represented to it that the contingent fee on the ABC Client Contingency Fee Matter belonged to AMS, rather than to Polsinelli, and requested that ABC Client pay the contingent fee in the Fall of 2025, rather than immediately.

22. Mastriani's purported justification for this request was that "there is a strong possibility that I may be joining a new firm in a couple of months. If I do, the payment would be made to that firm, which I will then pass to me and my old firm [AMS]."

23. ABC Client responded by email to Mastriani's request the same day and refused,

---

[3] The Payment Letter stated that the Client Payment was enclosed with the Payment Letter, but it was actually not remitted to Polsinelli until June 23, 2025.

based on the status of Polsinelli as its vendor of record for the payment and its Engagement Letter with Polsinelli.

24. After ABC Client properly refused to pay the fee to AMS, Mastriani then emailed non-attorney Polsinelli staff members, Nicole Nowak and Morrisa Costanzo, on June 9, 2025, and advised them that ABC Client would be sending the contingent fee to Polsinelli and directed them to "process and transfer the funds to our AMS Trade account as you have done in the past;" that is, as a Prior Matter, rather than in accordance the Engagement Letter.

25. On June 13, 2025, Ms. Nowak inquired of Mastriani in an email whether there was a written communication from ABC Client indicating that this fee was for a Prior Matter and whether "there is the potential for receiving a success fee or not" on the ABC Client Contingency Fee Matter, in an attempt to confirm whether the fee should be passed onto AMS as a Prior Matter or whether it belonged to Polsinelli as arising from the ABC Client Contingency Fee Matter.

26. Mastriani intentionally and fraudulently misrepresented the nature and purpose of the ABC Client Payment in responding to Ms. Nowak on June 13, 2025, including the following representations (collectively, the "Representations"):

    a. "The letter from [ABC Client] is attached. However, there is no 'success fee.'"

    b. "AMS receives the royalty payments from [Prior Matters]."

    c. "[T]he [Client Recovery] was from the defendants in the . . . district court case for settlement of potential damages in that case. We were not counsel of record in that case . . ."

    d. "However, the [ABC Client] CEO and his team decided to give me and AMS, not Polsinelli, a share."

e. "Not that I expect it to, but if Polsinelli takes a position that it is entitled to a share of the district court settlement I will oppose it by any means necessary."

27. Mastriani's statement to Ms. Nowak that there was no success fee was false and misleading.

28. Mastriani's statement to Ms. Nowak that AMS receives royalty payments from [Prior Matters] was misleading in that it implied that the fee was being paid on Prior Matters, rather than on the ABC Client Contingency Fee Matter under the Engagement Letter.

29. Mastriani's statement to Ms. Nowak that the Client Recovery was from defendants in the district court case in which Polsinelli was not counsel of record was also false and misleading as it implied that the Client Recovery was not from the ABC Client Contingency Fee Matter and omitted that the Engagement Letter provided that Polsinelli was entitled to a contingent fee on all recoveries from ABC Client's settlement of *any* complaint in either court involved against any respondent.

30. Mastriani's statement that the ABC Client CEO and his team decided to give Mastriani and AMS the fee was false.

31. Relying on Mastriani's false and misleading representations and omissions, on June 13, 2025, Ms. Nowak emailed Ms. Costanzo (who Mastriani had previously directed to wire the ABC Client Payment to AMS on June 9, 2025), and other members of Polsinelli accounting staff and stated, "AMS Trade has been advised that they will be receiving the <u>final [Prior Matter] licensing payment</u> to be sent to Polsinelli by [ABC Client] and due to Louis Mastriani." (Emphasis in the original). Ms. Nowak also included AMS wire transfer instructions to send the ABC Client Payment to AMS.

7

32. Mastriani was copied on this email.

33. Mastriani knew at the time that Ms. Nowak sent it that her statement to accounting staff that the ABC Client Payment was a "licensing payment," that is, a Prior Matter royalty payment, was incorrect and that her statement had been based on his own false and misleading representations and omissions to Ms. Nowak.

34. As an employee and fiduciary of Polsinelli, and because he knew Ms. Nowak's statements to accounting staff were incorrect and had been based on his own false and misleading statements to Ms. Nowak, Mastriani had a duty to speak and correct the incorrect statements before accounting staff later wired the ABC Client Payment to AMS.

35. Mastriani failed to do so.

36. On or about June 23, 2025, ABC Client paid to Polsinelli a contingent fee of $1,542,385.21 (the ABC Client Payment) in connection with the Client Recovery under the terms of the Engagement Letter, and on June 25, 2025, Polsinelli accounting staff wired the ABC Client Payment to AMS.

37. Mastriani then caused AMS to transfer all or a portion of the ABC Client Payment to himself personally and others associated with AMS.

38. After Polsinelli accounting staff wired the ABC Client Payment to AMS on or about June 25, 2025, Mastriani gave notice to Polsinelli on July 17, 2025, that he was leaving the firm.

39. Thereafter, firm management inquired of the status of the ABC Client Contingency Fee Matter and learned that Mastriani had fraudulently and improperly caused Polsinelli staff to wire the ABC Client Payment to AMS.

40. Multiple demands have since been made by Polsinelli to Mastriani to return the ABC Client Payment, including in a letter dated August 1, 2025.

41. On or about August 4, 2025, Mastriani responded to Polsinelli's demand letter of August 1, 2025, refusing to return the ABC Client Payment.

42. However, on or about August 6, 2025, Mastriani wire transferred to Polsinelli the sum of $281,596.48 (the "Mastriani Wire") with the remittance information of "Mastriani Payment."

43. On August 6, 2025, Polsinelli asked Mastriani to state the purpose of the Mastriani Wire and provide an explanation as to the amount of the Mastriani Wire.

44. On August 7, 2025, Mastriani emailed Polsinelli, stating that he had distributed $375,000 from AMS to another AMS owner and argued that the only portion of the ABC Client Payment that he thought Polsinelli had a right to receive was $939,654.94, which he argued was the Client Recovery in the ABC Client Contingency Fee Matter; that he only received $703,991.20 from AMS "as (his) portion of the contingency payment attributable to" the Client Recovery in the ABC Client Contingency Fee Matter; that he claimed to be entitled to $422,394.72, consisting of 45% of the sum of $939,654.94; that he was giving Polsinelli the sum of $281,146.48, which he claimed was his "share of the (Client Recovery in the ABC Client Contingency Fee Matter), less the amount owed to (him) under the correct formula, $422,394.72."

45. While Mastriani's arguments and calculations are false and baseless, his August 7, 2025 communication constitutes an admission that he converted and diverted funds to himself that belonged to Polsinelli.

46. Except for the Mastriani Wire, Defendants have refused to return the ABC Client Payment, despite repeated demands.

47. Polsinelli herewith re-alleges and incorporates herein all the allegations in the Complaint.

9

48. This motion is supported by the Declaration of Patrick Woolley (the "<u>Polsinelli Declaration</u>"), filed concurrently herewith and referenced herein as **Exhibit 1**, and the facts and matters set forth therein are hereby incorporated in this motion.

49. This motion is also supported by the Declaration (the "<u>Receiver's Declaration</u>") of Michael F. Flanagan (the "<u>Receiver</u>"), filed concurrently herewith and referenced herein as **Exhibit 2**.

50. Polsinelli has filed Suggestions in Support of Motion for Appointment of Receiver (the "<u>Memorandum</u>") concurrently herewith, and the facts and authorities set forth therein are hereby incorporated in this motion.

*<u>Statutory Grounds for Appointment of Receiver</u>*

51. Section 515.500 et seq. of the Revised Statutes of Missouri, known as the "Missouri Commercial Receivership Act" (the "<u>Act</u>") provides for the appointment of a receiver under the circumstances and based on the grounds set forth in the Act.

52. Pursuant to § 515.510.1(2) of the Act, this Court has the power to appoint a receiver "(i)n an action in which the person seeking appointment of a receiver has a(n) . . . interest in property . . . , and . . . (t)he appointment of a receiver with respect to the property . . . is necessary to keep and preserve the property . . . or to protect any business or business interest concerning the property . . ."

53. Pursuant to § 515.510.1(7) of the Act, this Court has the power to appoint a receiver "(u)pon attachment of real or personal property if the property attached is . . . in danger of waste, impairment, or destruction or if a debtor has absconded with, secreted, or abandoned the property, and it is necessary to collect, conserve, manage, control, or protect it, or to dispose of it promptly, or if the court determines that the nature of the property or the exigency of the case otherwise

provides cause for the appointment of a receiver."

54. Additionally, pursuant to § 515.510.1(14) of the Act, this Court has the power to appoint a receiver to prevent irreparable injury to the person or persons requesting the appointment of a receiver with respect to the debtor's property.

55. Additionally, pursuant to § 521.300 RSMo., Polsinelli is also entitled to the appointment of a receiver in connection with the writ of attachment sought in Count IX of the Complaint to take charge of the Remaining ABC Client Payment. Section 521.300 provides in relevant part as follows:

> 521.300. **Receiver appointed, by whom — oath and bond required — who may sue on bond.** — The court, or in vacation the judge, may in a proper case, on the application of the plaintiff, appoint a receiver, who shall take an oath faithfully to discharge his duty, and shall enter into bond to the state of Missouri, in such sum as the court or judge may direct, and with security approved by the court or judge, for the faithful performance of his duty as receiver, and that he will pay over all money and account for all property which may come into his hands by virtue of his appointment, at such times and in such manner as the court may direct. . . .

56. The Writ of Attachment sought in Count IX of the Complaint justifies the appointment of a Receiver because the damages for which this action is brought are for injuries arising from the commission of felonies by the Defendants and the use of false representations by Mastriani.

57. The appointment of a Receiver to enforce a Writ of Attachment is also the least intrusive method of preserving the Remaining ABC Client Payment because the Receiver and Writ of Attachment merely prevent the Defendants from transferring the Remaining ABC Client Payment without the Receiver's and Court's approval, and the Receiver can take direction from the Court on any disposition of the Remaining ABC Client Payment.

58. The appointment of a receiver is the appropriate immediate remedy in this case. This Court has previously applied the Act to issue an Order Appointing Receiver over properties

11

and assets in connection with a complaint alleging that the defendants therein "embezzled funds and improperly disbursed funds to themselves." *See*, *Peoples Bank of Moniteau County v. Hampton*, 18-cv-04099-WJE, Doc. 18 (May 29, 2018).

59. Additionally, pursuant to § 515.510.6 of the Act, "(t)he appointment of a receiver is not required to be relief ancillary or in addition to any other claim, and may be sought as an independent claim and remedy." Therefore, this Court is authorized to appoint a receiver with respect to the ABC Client Payment, even if the Court does not also issue a Writ of Attachment or grant injunctive relief.

60. Additionally, irreparable harm will be caused to Polsinelli if the Defendants are permitted to further transfer the Remaining ABC Client Payment.

61. By reason of the foregoing facts, Polsinelli is entitled to the appointment of a limited Receiver by Order of this Court to protect and preserve the Remaining ABC Client Payment to preserve it for execution upon the entry of a judgment for money damages in favor of Polsinelli, as authorized and mandated under the Act, and to enable the Court to determine the parties entitled to the Remaining ABC Client Payment.

62. Polsinelli has no adequate remedy at law (other than under § 515.500 et. seq. RSMo., Federal Rule of Civil Procedure 66, and § 521.300 RSMo) and needs this Court's Order Appointing a Receiver to protect its interests in the ABC Client Payment and to keep, preserve, and maintain the Remaining ABC Client Payment.

63. The appointment of a limited receiver pursuant to RSMo. § 515.515, Federal Rule of Civil Procedure 66, and § 521.300 RSMo. is appropriate for the foregoing purposes, with the power to take all actions of a limited receiver as defined in Section 515.515, and with the enumerated powers set forth below.

64. Accordingly, Polsinelli seeks the appointment of Michael F. Flanagan as a limited receiver (the Receiver) with respect to the ABC Client Payment. The Receiver is suitable and capable, with knowledge of funds such as the ABC Client Payment. A true copy of a resume of the Receiver is attached to the Receiver's Declaration as **Exhibit 2-A** thereto and is incorporated herein by reference.

WHEREFORE Polsinelli hereby moves this honorable Court for its Order providing that Michael F. Flanagan be appointed to act and serve as a limited receiver for the ABC Client Payment and any proceeds thereof, and specifically providing for the following:

    A. The Receiver shall have all the powers and authority granted to receivers under RSMo. § 515.500, et seq. (the Act) and the full power and authority to:

        i. Assemble, take exclusive control and possession of, collect, and manage the Remaining ABC Client Payment, and take all actions deemed reasonable and appropriate by the Receiver to preserve the Remaining ABC Client Payment and enforce all rights in the Remaining ABC Client Payment;

        ii. Take all actions the Receiver deems reasonable and appropriate to prevent waste to and to protect and safeguard the Remaining ABC Client Payment;

        iii. Enjoin all persons, firms, or corporations, and any persons acting under their direction, or any persons or entities controlling any part of the ABC Client Payment, less the Mastriani Wire, from in any manner disturbing the Receiver's possession and control of the Remaining ABC Client Payment, and ordering that such persons and entities are prohibited and restrained from disposing of, dissipating, mishandling or misappropriating the ABC Client Payment, all until further order of the Court;

105404807.8

iv. Communicate with any persons on any matters related to the ABC Client Payment, and enter into any contracts, agreements, consent orders, memoranda, or other documents as the Receiver may determine appropriate with respect to the ABC Client Payment.

v. Gain access to the books and records and all information necessary to collect, manage and preserve the Remaining ABC Client Payment;

vi. If requested by the Receiver, require all persons managing or controlling the Remaining ABC Client Payment and their agents and contractors to turn over and deliver possession to the Receiver all of the Remaining ABC Client Payment subject to this Order, without any right of offset or recoupment, including: (1) all contracts and other documents relating to the ABC Client Payment, and all communications and correspondence pertinent thereto; (2) all deposits and all other sums relating to the ABC Client Payment, and any accountings of any of the foregoing; (3) any and all documents pertaining to ongoing or potential litigation with respect to the ABC Client Payment; (4) any and all communications and correspondence pertinent thereto; and (5) all other books, records, contracts, accounts, papers and other such items of information as will enable the effective control and conservation of the Remaining ABC Client Payment;

vii. Institute, prosecute, defend, compromise, or intervene in or become a party to such actions or proceedings in state or federal court relating to the Remaining ABC Client Payment, and those necessary to recover or dispose of the Remaining ABC Client Payment, for the carrying out of the terms and provisions

of the Court's order appointing the Receiver, and/or to defend against any action brought against the Receiver acting in such capacity;

  viii. Retain, hire, or discharge such accountants and attorneys as may in the Receiver's judgment be advisable or necessary in the control or custody of the Remaining ABC Client Payment;

  ix. Retain legal counsel to enforce the Receiver's duties, which counsel may be the same as counsel representing Polsinelli, and to retain such other legal counsel as may be necessary to protect its interests;

  x. Retain any other person, firm, or corporation that the Receiver deems necessary to carry out his duties to collect or control the Remaining ABC Client Payment;

  xi. Negotiate and execute any contracts or agreements needed in connection with the Remaining ABC Client Payment;

  xii. Prepare and file any federal and state income tax returns that may be needed in connection with the Remaining ABC Client Payment, or retain any accountants or tax preparers for this purpose, except that this authorization shall not impose any duty on the Receiver to prepare or file any such tax returns, and the obligation to do so shall remain with the entity or entities ordinarily responsible for doing so; and

  xiii. Undertake all actions specifically set forth in this Complaint, as well as to exercise the usual and customary powers afforded to a receiver under Missouri law (except as otherwise limited by any order of this Court), until further order of this Court.

15
105404807.8
Case 4:25-cv-00665-FJG   Document 2   Filed 08/21/25   Page 15 of 18

B. All persons, firms, and corporations holding any records concerning the ABC Client Payment shall immediately turn over to the Receiver the Remaining ABC Client Payment, all files, documents, records, and instruments related to the ABC Client Payment and any proceeds therefrom.

C. Pursuant to RSMo. § 515.575, immediately upon entry of the Order appointing the Receiver, the Defendants and their, employees, managers, and all other persons interested in the ABC Client Payment, are enjoined and stayed from:

   i. Commencing or continuing (including issuing, employing, or serving process) any judicial, administrative, or other action or proceeding against the Properties, or its business operations, that was or could have been commenced before the entry of the Order appointing the Receiver;

   ii. Enforcing against the ABC Client Payment any judgment or order obtained before the Order appointing the Receiver;

   iii. Any act to obtain possession of the Remaining ABC Client Payment from the Receiver, or to interfere with, or exercise control over, the ABC Client Payment;

   iv. Any act to create, perfect, or enforce any lien or claim against the ABC Client Payment, including any exercise of a right of setoff; or

   v. Any act to collect, assess, or recover a claim against the ABC Client Payment that arose before the entry of the Order appointing the Receiver.

D. All persons who have come into possession of the Remaining ABC Client Payment or any money paid or transferred in connection with the Remaining ABC Client

Payment, or any part thereof shall yield and deliver possession of the same to the Receiver immediately upon request thereof.

E. For all purposes the Receiver appointed by this Order shall be considered a receiver appointed by this Court with the same rights, duties and obligations thereof and with the same relationships to the Court and to the parties to this litigation.

F. From the date of this Order, the Remaining ABC Client Payment is under the jurisdiction of this Court, and all persons and/or entities except the Receiver are hereby enjoined from prosecuting suits or claims, and transferring, conveying or encumbering the Remaining ABC Client Payment without the consent of the Receiver or Order of this Court.

G. Considering the appointment of the Receiver as a limited receiver under RSMo. § 515.515, the Receiver shall have no obligations to file such monthly reports with the Court that are ordinarily required of a general receiver under RSMo. § 515.570.

H. The Receiver may apply at any time to the Court, with notice to all other parties in this case, for further instruction and for further power necessary to enable the Receiver to properly fulfill his duties.

I. No person or entity may file suit against the Receiver, in his capacity as Receiver, unless otherwise authorized in advance by this Court.

J. When the Remaining ABC Client Payment has been collected, liquidated, and applied as instructed or ordered by the Court, when this case has been dismissed by Polsinelli, or when Polsinelli consents to the Receiver's discharge, the Receiver may request that he be discharged from his duties in this case and the Receiver shall be so discharged by further order of the Court.

K. The Order appointing the Receiver shall be in effect until terminated by order of this Court and the authority granted to the Receiver shall be self-executing unless the action specifically requires approval.

L. That the Receiver serves with no bond, or the same bond as the Court may set in connection with a Writ of Attachment as to the Remaining ABC Client Payment.

M. Entry of the Court's Order appointing the Receiver shall not in any manner affect, impair or prejudice any of the other rights and remedies of Polsinelli or any of the obligations and liabilities of the Defendants to Polsinelli under applicable law or equity.

Respectfully submitted,

POLSINELLI PC

By: /s/ *Todd H. Bartels*
 TODD H. BARTELS (MO #45677)
 tbartels@polsinelli.com
 900 W. 48th Place, Suite 900
 Kansas City, MO 64112
 (816) 572-4418
 Fax No.: (888) 253-8293

 MICHAEL A. CAMPBELL (MO #35392)
 mcampbell@polsinelli.com
 7676 Forsyth Blvd, Suite 800
 St. Louis, MO 63105
 (314) 889-8000
 Fax No.: (314) 231-1776

 *ATTORNEYS FOR PLAINTIFF*
 *POLSINELLI PC*