IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| POLSINELLI PC, | ) |
| Plaintiff, | ) ) ) |
| v. | )  Case No: 4:25-cv-00665 |
| LOUIS MASTRIANI | ) ) ) |
| and | ) ) |
| AMS TRADE LLP | ) ) |
| Defendants. | ) |

**SUGGESTIONS IN SUPPORT OF PLAINTIFF POLSINELLI PC'S
MOTION TO DISMISS COUNTS III AND V-VII OF
<u>DEFENDANT LOUIS MASTRIANI'S COUNTERCLAIMS</u>**

COMES NOW Plaintiff Polsinelli PC ("<u>Polsinelli</u>"), by and through its undersigned counsel, and hereby submits the following Suggestions in Support of Polsinelli's Motion to Dismiss Counts III and V-VII of Defendant Louis Mastriani's Counterclaims (Doc. 20) (the "<u>Counterclaims</u>"), and in support hereof states the following:

**I.  INTRODUCTION**

Polsinelli is a professional corporation and law firm. Defendant AMS TRADE LLP ("<u>AMS</u>") is a limited liability partnership law firm, and Defendant Louis Mastriani ("<u>Mastriani</u>") was formerly a partner of AMS TRADE LLP, and he subsequently joined Polsinelli as a senior attorney in or around January 2021.

In the Complaint (Doc. 1), Polsinelli asserts claims[1] seeking to recover damages caused by Defendants when they converted and improperly caused the disbursement of a client payment (the "<u>ABC Client Payment</u>") to themselves and others. On September 26, 2025, Defendants

---

[1] Polsinelli's claims include, in relevant part, claims for common law fraud, breach of fiduciary duties, conversion, money had and received, and unjust enrichment.

deposited $845,566.00^2$ into the Registry of the Court, pursuant to the Court's order dated September 20, 2025 (Doc. 19; see also Counterclaims, ¶53).

Now, Mastriani has asserted seven claims against Polsinelli. These Counterclaims fail because they are simply bald recitations of the elements of the claims, without any supporting facts. In addition, Count V (defamation) fails because absolute privilege applies to statements made in federal court pleadings.

## ***BACKGROUND***

On January 3, 2023, Mastriani joined Polsinelli as an employee with the title of Senior Partner, pursuant to a written offer and term sheet that he signed on October 7, 2022 ("Employment Agreement"). Pursuant to the Employment Agreement, he agreed, among other things, (a) to be a full-time attorney/employee with Polsinelli, (b) to terms of compensation, and (c) that he would be subject to the Policies and Procedures Manual of Polsinelli.[3]

Upon joining Polsinelli, Mastriani arranged for a client (referred to herein as "ABC Client") to be transferred from AMS to Polsinelli as its client. (The identity of the ABC Client is withheld for the protection of the ABC Client, but such identity is not necessary to Polsinelli's claims). Polsinelli and ABC Client also executed an engagement letter dated March 9, 2023 (the "Engagement Letter"), pursuant to which ABC Client agreed to pay Polsinelli a contingent fee on the "Net Sum Recovered" by the ABC Client after the filing of any complaint against certain adverse parties (the "ABC Client Contingency Fee Matter"). Mastriani acknowledged that any such fee paid by ABC Client would be paid to Polsinelli.

---

[2] Mastriani deposited $843,566 (Receipt #400009985) and AMS deposited $22,000 (Receipt #400009960).

[3] Polsinelli's Policies and Procedures Manual provides, among other things, that "[n]o attorney employee may practice his/her profession for any other person or entity, or accept fees for practicing their profession or the referral of legal business from any other person or entity," and "[e]mployees shall not accept gifts (whether in the form of cash, services, or any other nature) from a customer, client, supplier, or other business, other than an ordinary social amenity." Policies and Procedures, p. 57.

Although AMS ceased operations on or about December 31, 2022, Mastriani did not dissolve AMS as an entity because it was still receiving contingent fees on recurring royalty payments it earned prior to Mastriani joining Polsinelli, including from ABC Client, on other matters not the subject of the Engagement Letter (referred to herein as "Prior Matters"). Thereafter, ABC Client would, from time to time, remit to Polsinelli fees that AMS previously earned on Prior Matters, and Polsinelli would remit these to AMS.

On or about April 30, 2025, ABC Client entered into a favorable settlement agreement in the ABC Client Contingency Fee Matter. On information and belief, ABC Client received a substantial first payment in or about early May 2025, and the remainder shortly thereafter. By June 5, 2025, all such payments had been received by ABC Client (the "Client Recovery"). On information and belief, by this time, Mastriani was planning to leave his employment with Polsinelli, unbeknownst to Polsinelli.

In connection with the ABC Client Payment, ABC Client sent to Polsinelli, via Mastriani, a letter dated June 5, 2025 (the "Payment Letter"). In the Payment Letter, ABC Client advised that a payment of $1,542,385.21 ("ABC Client Payment") was being made in accordance with an engagement letter between AMS and ABC Client, a subsequent letter transferring all of ABC Client's matters and files to Polsinelli, and the Engagement Letter with Polsinelli.[4] Mastriani withheld the Payment Letter and did not initially disclose it to Polsinelli management or staff.

On June 5, 2025, after receiving the Payment Letter, Mastriani emailed ABC Client and requested that ABC Client pay the contingent fee after September 15, 2025, rather than immediately, and advised that he may be joining a new firm and the payment would be made to that firm, rather than to Polsinelli. ABC Client responded to Mastriani the same day and refused, based on the status of Polsinelli as its vendor of record for the payment and its Engagement

---

[4] The Payment Letter stated that the Client Payment was enclosed with the Payment Letter, but it was actually not remitted to Polsinelli until June 23, 2025.

Letter with Polsinelli, under which Polsinelli should receive the payment and distribute it according to its arrangements with Mastriani.

On or about June 23, 2025, ABC Client paid Polsinelli a contingent fee of $1,542,385.21 (the ABC Client Payment) under the terms of the Engagement Letter. On June 25, 2025, relying on Mastriani's false representations, Polsinelli accounting staff wired the ABC Client Payment to AMS. Mastriani then caused AMS to transfer all or a portion of the ABC Client Payment to himself personally and others associated with AMS.

After Polsinelli staff wired the ABC Client Payment to AMS on June 25, 2025, Mastriani gave notice to Polsinelli on July 17, 2025, that he was leaving the firm. Thereafter, firm management inquired about the status of the ABC Client Continency Fee Matter and learned that Mastriani had fraudulently caused Polsinelli staff to wire the ABC Client Payment to AMS. Multiple demands were made by Polsinelli to Mastriani to return the ABC Client Payment, including in a letter dated August 1, 2025. On August 4, 2025, Mastriani responded and refused to return the ABC Client Payment. But on August 6, 2025, Mastriani wired to Polsinelli the sum of $281,596.48 with the remittance information of "Mastriani Payment." Except for that wire transfer, Defendants have refused to return the ABC Client Payment, despite repeated demands.

## II. LEGAL STANDARD

To withstand a Rule 12(b)(6) motion, a claimant must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a claimant does not have to "'set out *in detail* the facts upon which he bases his claim, [Fed. R. Civ. P. 8(a)(2)] still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Eckert v. LVNV Funding LLC*, 647 F. Supp. 2d 1096, 1100 (E.D. Mo. 2009) (quoting *Twombly,* 550 U.S. at 555, n. 3).

Although Federal notice pleading does not require detailed factual allegations, it nonetheless "demands more than the unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 552 U.S. at 678. The Supreme Court has further stated that "a formulaic recitation of the elements of a cause of action will not do." *Id.* Therefore, "the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." *Wiles v. Capitol Indemnity Corp.,* 280 F.3d 868, 870 (8th Cir. 2002). In short, legal conclusions must be supported by factual allegations to survive a motion to dismiss. *Iqbal*, 556 U.S. at 679.

### III. ARGUMENT

#### A. Mastriani pleads no facts to show any Negligent Misrepresentation by Polsinelli (Count III).

Under Missouri law, the elements of negligent misrepresentation are: (1) the speaker supplied information in the course of his or her business or because of some other pecuniary interest; (2) due to the speaker's failure to exercise reasonable care or competence in obtaining or communicating this information, the information was false; (3) the speaker intentionally provided the information for the guidance of a limited group of persons in a particular business transaction; (4) the listener justifiably relied on the information; and (5) as a result of the listener's reliance on the statement, the listener suffered a pecuniary loss. *M & H Enterprises v. Tri-State Delta Chemicals, Inc.*, 35 S.W.3d 899, 904 (Mo. Ct. App. 2001).

First, Mastriani alleges that "In the course of inducing Mastriani to accept employment … Polsinelli made false representations to Mastriani including, but not limited to, representations regarding Mastriani's pay structure." (Counterclaims, ¶71). Mastriani does not allege what representations he is referring to, or how they were allegedly false. The remainder of his allegations simply recite the elements of the claim, and do not set forth any facts. Specifically, Mastriani alleges as follows:

5

106493525.4
Case 4:25-cv-00665-FJG    Document 24    Filed 10/24/25    Page 5 of 10

> 72. In the course of employing Mastriani, Polsinelli failed to exercise reasonable care in making statements to Mastriani regarding Mastriani's pay structure.
>
> 73. In the course of employing Mastriani, Polsinelli intentionally supplied information regarding Mastriani's alleged pay structure to induce Mastriani to leave his employ with AMS, not consider other employers, and work for Polsinelli.
>
> 74. Mastriani reasonably relied on Polsinelli's representations regarding Mastriani's pay structure in going to work for Polsinelli.
>
> 75. As a direct and proximate cause of Polsinelli's misrepresentations, Mastriani suffered substantial financial losses.

(Counterclaims, ¶¶ 72-75). Mastriani pleads no facts to support these bald statements. Mastriani does not allege what information Polsinelli allegedly supplied about his pay structure. Perhaps most tellingly, Mastriani does not allege what "substantial financial losses" he suffered. Such allegations are the very definition of "conclusory" and should be dismissed for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### B. Mastriani pleads no facts to show any Tortious Interference with Business Relations (Count V).

Under Missouri law, to establish a claim for tortious interference with a business relationship or expectancy, a plaintiff must prove: (1) the existence of a contract or a valid business relationship; (2) defendant's knowledge of the contract or relationship; (3) defendant's intentional interference inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages.[5] *Chandler v. Allen*, 108 S.W.3d 756, 760 (Mo. Ct. App. 2003).

---

[5] Under Missouri law, the business expectancy must also be reasonable and valid, and not show just a mere hope of establishing a business relationship. *Stockdall v. TG Invs., Inc.*, 129 F. Supp. 3d 871, 881 (E.D. Mo. 2015) (interpreting Missouri law). "A regular course of similar prior

106493525.4

While Mastriani's allegations track the bare legal elements of tortious interference with a business relationship, Mastriani fails to provide *any* factual support for this claim whatsoever.

Here, Mastriani alleges in conclusory fashion that "Mastriani held valid business relationships and business expectancies with certain current and former clients before, during, and after his employment with Polsinelli". (Counterclaims, ¶82). But he does not identify any of these alleged clients, or any facts showing a business relationship or expectancy. Mastriani then alleges that "(u)pon Mastriani's termination of employment with Polsinelli, Polsinelli intentionally interfered with Mastriani's business expectancies by, inter alia, failing to forward business queries to Mastriani, failing to provide Mastriani with his (and his clients' files), improperly communicating with Mastriani's clients after Mastriani's departure from Polsinelli, and causing or aiding the publication of defamatory statements regarding Mastriani." (Counterclaims, ¶85). Again, he alleges no facts identifying any examples of "failing to forward business queries", failing to provide files, or any improper communications of defamatory statements. As a matter of law, these conclusory allegations are insufficient to withstand a motion to dismiss.

Mastriani's tortious interference claims also fail to allege any facts establishing causation, or what damages, if any, Mastriani sustained from Polsinelli's alleged interference. *See Kesler v. Curators of the Univ. of Missouri*, 516 S.W.3d 884, 897 (Mo. Ct. App. 2017) ("the plaintiff must show that the defendant's acts induced or caused a breach of the relationship."); *see Taylor v. Taylor*, 566 S.W.3d 641, 657 (Mo. Ct. App. 2018) (dismissing plaintiff's tortious interference with business expectancy claim against defendant where plaintiff failed to allege damages sustained from said tortious interference).

---

dealings suggests a valid business expectancy." *Id*. "More specifically, the plaintiff must show a reasonable probability or expectancy of entering into a business relationship." *Scott v. Suburban J. of Greater St. Louis, LLC*, No. 4:08CV01296 ERW, 2009 WL 3401113, at *4 (E.D. Mo. Oct. 19, 2009), *aff'd*, 376 F. App'x 661 (8th Cir. 2010) (interpreting Missouri law).

7
106493525.4
Case 4:25-cv-00665-FJG     Document 24     Filed 10/24/25     Page 7 of 10

### C. Mastriani pleads no facts to show Defamation (Count VI), and absolute privilege applies to statements made in the federal court pleadings.

Under Missouri substantive law, the elements of defamation are: "(1) publication, (2) of a defamatory statement, (3) that identifies the plaintiff, (4) that is false, (5) that is published with the requisite degree of fault, and (6) damages the plaintiff's reputation." *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 70 (Mo. 2000).

Again, Mastriani has not alleged any specific statements, where or when they were published (or what third parties viewed the published statements), how they harmed his reputation, and what reputational damage he incurred. Instead, he simply alleges that "Polsinelli published defamatory statements regarding Mastriani which were false (Counterclaims, ¶89), that they "harmed Mastriani's reputation in the legal community and the community of his (potential) clients" (Counterclaims, ¶90), and that "Mastriani suffered substantial financial losses." (Counterclaims, ¶92). Such conclusory allegations are insufficient to withstand a motion to dismiss.

In addition, to the extent Mastriani's allegations refer to statements or facts asserted in Polsinelli's pleadings in this matter, such counts fail because statements made during judicial proceedings are absolutely privileged and thus cannot support Mastriani's claims.[6] It is the established law of Missouri that statements made during proceedings of a judicial body are absolutely privileged if they are relevant to the issues before the body. *Li v. Metro. Life Ins. Co.*, 955 S.W.2d 799, 803 (Mo. Ct. App. 1997). Indeed, the Missouri Supreme Court has long recognized this absolute privilege. *Jones v. Brownlee*, 161 Mo. 258, 61 S.W. 795, 796 (1901) ("whatever one may allege in his pleading by way of defense to the charge brought against him

---

[6] A defamation analysis consists of two primary components. First, there is the question of whether a statement is defamatory at all. *Pape v. Reither*, 918 S.W.2d 376, 380 (Mo. Ct. App. 1996). Once a statement is found to be defamatory, the court inquires as to whether one or more privileges (e.g., the privilege for statements made in a judicial proceeding, the privilege applicable to statements of opinion,) shelters the defaming party from legal action. *Id.*

8

or by way of counterchage, counterclaim, or set–off can never give a right of action"); *Hager v. Major*, 186 S.W.2d 564, 568 (Mo. 1945) (noting that the absolute privilege applies to pertinent matter in pleadings, motions, affidavits and other papers in any judicial proceeding, even though false and malicious.). Accordingly, if Mastriani's defamation claims refer to statements Polsinelli made in the pleadings, such claims should be dismissed as a matter of law.

D.  **Mastriani pleads no facts to show Prima Facie Tort (Count VII).**

The elements of prima facie tort are: (1) an intentional unlawful act by the defendant; (2) defendant's intent to injure the plaintiff; (3) injury to the plaintiff; and (4) an absence of, or insufficient justification for defendant's act. *Woolsey v. Bank of Versailles*, 951 S.W.2d 662, 668 (Mo. Ct. App. 1997). "Prima facie tort is not a catchall remedy of last resort for claims that are not otherwise salvageable under traditional causes of action." *Tamko Roofing Prod., Inc. v. Smith Eng'g Co.*, 450 F.3d 822, 830-31 (8th Cir. 2006). Additionally, the intent must be a "specific, clear-cut, express malicious intent to injure; mere intent to do the act which results in injury is not sufficient." *Id.* at 669.

Mastriani alleges that "Polsinelli lured Mastriani into its employ" (Counterclaims, ¶94), intended to profit from Mastriani's employment (Counterclaims, ¶95), that as a result of "Polsinelli's scheme of inducing Mastriani into its employment . . . Mastriani suffered substantial financial loss (Counterclaims, ¶96), and that Polsinelli has no justification for failing to appropriately pay Mastriani (Counterclaims, ¶97). But again, these are simply conclusory statements that parrot the elements of the claim. Mastriani does not identify an intentional unlawful act or the alleged injury. Indeed, the allegations establish the opposite – that Polsinelli employed Mastriani, which was entirely legal. In addition, Mastriani has not set forth facts regarding the "specific, clear-cut, express malicious intent to injure". *Woolsey*, 951 S.W.2d at 669.

9

## IV. CONCLUSION

For the reasons set forth above, Polsinelli respectfully requests that the Court dismiss Counts III and V-VII of the Counterclaims with prejudice, and enter such other and further relief as it deems just and proper.

Respectfully submitted,

POLSINELLI PC

By: /s/ *Todd H. Bartels*
TODD H. BARTELS (MO #45677)
tbartels@polsinelli.com
900 W. 48th Place, Suite 900
Kansas City, MO 64112
(816) 572-4418
Fax No.: (888) 253-8293

MICHAEL A. CAMPBELL (MO #35392)
mcampbell@polsinelli.com
7676 Forsyth Blvd, Suite 800
St. Louis, MO 63105
(314) 889-8000
Fax No.: (314) 231-1776

*ATTORNEYS FOR PLAINTIFF*
*POLSINELLI PC*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of October, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to all attorneys registered for ECF filing as of that date.

/s/ *Michael A. Campbell*